**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-CV-81870-RUIZ**


BRAINDON N. COOPER a/k/a MR COOPER,
TIMOTHY L. VALENTINE a/k/a DRUM'N SKILLZ,
and SIGNATURE SERIEZ ENTERTAINMENT, INC.,

                         Plaintiffs,

         -against-

CHRIS BROWN ENTERTAINMENT, LLC d/b/a
CHRISOPER BROWN ENTERTAINMENT, LLC,
CHRISTOPHER MAURICE BROWN a/k/a CHRIS
BROWN, AUBREY DRAKE GRAHAM a/k/a DRAKE,
ANDERSON HERNANDEZ a/k/a VINYLZ, JOSHUA
LOUIS HUIZAR a/k/a J-LOUIS, TRAVIS DARELLE
WALTON a/k/a TEDDY WALTON, NIJA CHARLES
a/k/a NIJA, TYLER BRYANT a/k/a VELOUS, MICHEE
PATRICK LEBRUN a/k/a CHE ECRU, NOAH SHEBIB
a/k/a 40, J-LOUIS PRODUCTIONS, LLC d/b/a
JLOUISMUSIC, CULTURE BEYOND UR
EXPERIENCE, SONGS OF UNIVERSAL, INC.,
AMNIJA, LLC d/b/a SONGS OF AMNIJA,
1DAMENTIONAL PUBLISHING, LLC, MAVOR &
MOSES PUBLISHING, LLC d/b/a RONCESVALLES
MUSIC PUBLISHING, SONY/ATV SONGS LLC,
VINYLZ MUSIC GROUP LLC, and SONY MUSIC
ENTERTAINMENT d/b/a RCA RECORDS,

                         Defendants.

_____/


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FILED BY APPEARING DEFENDANTS**

Plaintiffs Braindon N. Cooper a/k/a Mr Cooper ("Cooper"), Timothy L. Valentine a/k/a Drum'n Skillz, and Signature Seriez Entertainment, Inc. (collectively, "Plaintiffs") hereby file this memorandum of law in opposition to the Motion to Dismiss [CM/ECF Docs. 30-31] ("Motion") filed on behalf of (or joined by) Defendants Chris Brown ("Brown"), Chris Brown Entertainment, LLC, Culture Beyond Ur Experience; Sony/ATV Songs, LLC *n/k/a* Sony Music Publishing (US) LLC, Sony Music Entertainment, Songs of Universal, Inc., J-Louis Productions, LLC and Joshua Louis Huizar, Anderson Hernandez *p/k/a* Vinylz and Vinylz Music Group, LLC, Amnija, LLC *d/b/a* Songs of Amnija; Nija Charles *p/k/a* Nija, and Michee Patrick Lebrun a/k/a Che Ecru (collectively, the "Moving Defendants").[1]

## PRELIMINARY STATEMENT

Ignoring the applicable standards under Fed. R. Civ. P. 12(b)(6), the Moving Defendants impermissibly seek to elevate Plaintiffs' burden well beyond that which should be imposed at the motion to dismiss stage by repeatedly arguing that Plaintiffs have failed to "establish" or otherwise "prove" the elements of their copyright infringement claim.  In this regard, the Motion is replete with inaccurate, incomplete, and arguably disingenuous statements of law, mostly from cases outside the 11th Circuit decided in the obviously distinguishable summary judgment context.  The Motion also relies upon several self-serving mischaracterizations and gratuitously narrow constructions of Plaintiffs' allegations, all of which should be flatly rejected.  Indeed, when the correct legal standards are applied, it is clear that the Motion should be denied, and Plaintiffs should be entitled to proceed on each of the well-pleaded claims in their Complaint.

As a threshold matter, the Motion begins with the flawed contention that Plaintiffs cannot possibly state a claim for copyright infringement against Defendants arising from the release of Defendants' hit song, *No Guidance* ("Defendants' Work"), because Defendants include "two of the biggest artists in the world" (Motion, p. 1).  This argument – essentially that Defendants are

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint, CM/ECF Doc. 1 and 4-1 ("Compl.").

1

somehow <u>immune</u> from copyright infringement claims by individuals who are not as famous as they are – is both egotistical and without any legal basis whatsoever.  Undoubtedly, regardless of their fame and status, Defendants may be, and should be, held accountable for their infringement upon Plaintiffs' song, *I Love Your Dress* ("Plaintiffs' Work"), once such infringement is fully proven.  For now, the Motion should simply be denied because the Complaint contains factual allegations which, when accepted as true (as they must be on a motion to dismiss), plausibly establish both elements of Plaintiffs' infringement claim: (1) Plaintiffs' ownership of a valid copyright; and (2) the copying of constituent and original elements of Plaintiffs' Work.

Since the first element of Plaintiffs' copyright infringement claim is undisputed, the Motion focuses on the second element – copying.  However, the Moving Defendants' fixation on various evidentiary methods of <u>proving</u> this second element is fundamentally improper at the pleading stage given, *inter alia*, that Plaintiffs have not yet had the benefit of any discovery through which they might uncover direct evidence of copying or, alternatively, further circumstantial evidence regarding Defendants' access to Plaintiffs' Work.  Despite their efforts to do so, the Moving Defendants cannot unilaterally limit Plaintiffs to one method of proof at this juncture.  Moreover, and in any event, even under the Moving Defendants' faulty framework, Plaintiffs have satisfied their initial burden by adequately <u>alleging</u> both "access" and "substantial similarity."

First, to properly plead "access," a plaintiff need not allege that the defendants actually viewed or heard the relevant work, but merely that they had a "reasonable opportunity" to do so.  Here, despite the haughty claim that famous artists like Drake and Brown could not conceivably have viewed or heard Plaintiffs' so-called "obscure" work, the Complaint alleges facts supporting the inescapable conclusion that Defendants had, at very least, a reasonable opportunity to do so.  To be sure, as alleged, an A&R representative associated with the famed Cash Money Records label – whom the Moving Defendants explain would have been "responsible for helping the company find, sign and guide new talent" (Motion, p. 4, n. 3 (citation omitted)) – identified Cooper

as an artist of interest, actively solicited his work, and even proposed a meeting in Drake's hometown.  This alone negates the Moving Defendants' baseless suggestion that Plaintiffs' Work was so "obscure" that it should be considered virtually inaccessible.  Plaintiffs' allegations that the A&R representative also shared close business contacts with certain Defendants and received a copy of Plaintiffs' Work only months before the release of Defendants' Work further belie the Moving Defendants' assertions.

Moreover, as alleged, Cooper had performed Plaintiffs' Work at a large public music venue in Miami and published a video of that performance on YouTube well before Defendants' Work was completed.  Plaintiffs' Work was also published on major music distribution platforms, including Spotify and Apple Music, and was simultaneously marketed and published on various social media platforms and websites, including YouTube, Instagram, Facebook, and Twitter. Together, these facts – as alleged and presumed to be true for purposes of the present Motion – more than satisfy Plaintiffs' low burden of pleading that Defendants had a reasonable opportunity to view or hear Plaintiffs' Work prior to and/or during the creation of the infringing work.

In the face of these specific allegations of access, the Moving Defendants improperly ask this Court to determine, at this early stage, that Plaintiffs cannot possibly, under any circumstances, meet their evidentiary burden of proving access.  Notably, however, the Moving Defendants do not appear to cite to a single case establishing that such a determination can be made, with prejudice, at the pleading stage.  To the contrary, the legal authority cited by the Moving Defendants demonstrates that such a determination is generally not appropriate on a motion for summary judgment, let alone on a motion to dismiss.  Accordingly, Plaintiffs' factual allegations regarding "access" are sufficient to survive the Motion, and the Court should allow Plaintiffs the opportunity to move forward with appropriate discovery on this issue.

Second, Plaintiffs have sufficiently pleaded facts that plausibly establish the requisite "substantial similarity" between Plaintiffs' Work and Defendants' Work.  As alleged in the

Complaint, a proper comparative analysis of the "beat, lyrics, hook, rhythmic structure, metrical placement, and narrative context" demonstrates that Defendants' Work was copied or principally derived from Plaintiffs' Work. Defendants also blatantly ignore Plaintiffs' allegation that "[h]ighly regarded musicology experts"[2] have already engaged in such a comparative analysis and concluded that the two works share a "high degree of combined similar features," which are unlikely to be found <u>in combination</u> in prior musical works (even if, separately, certain similar features might be found).

 In arguing that Plaintiffs are necessarily unable to establish substantial similarity between the two works, the Moving Defendants also deliberately mischaracterize the factual basis for Plaintiffs' claims before spending several pages tearing down the strawman that they created. In fact, contrary to the Moving Defendants' narrow reading of the Complaint, Plaintiffs do not allege similarity based <u>solely</u> upon "the alleged similarity between the wholly lyrical phrase 'you got it' and the alleged similar (and unoriginal) theme of a hard-working, attractive woman" (Motion, p. 2). Rather, as alleged, Defendants' Work is substantially – if not strikingly – similar to Plaintiffs' Work in that it contains several compositional elements, which, in combination, were clearly original to Plaintiffs' Work. Such elements include not only the lyrics of the hook, but the beat, primary scale degrees, and rhythmic structure that temporally accompany those lyrics and are repeated numerous times throughout each song. In any event, as the relevant case law makes clear, the question of substantial similarity is not one that should be decided by the Court on a motion to dismiss filed pursuant to Rule 12(b)(6).

The Moving Defendants' remaining arguments are likewise meritless. Federal copyright law does not preempt Plaintiffs' unjust enrichment claim since the latter requires proof of "extra

---

[2]     Defendants are undoubtedly aware, based on the Pre-Suit Notice and Demand described in the Complaint, that Judith Finell and her colleagues at Judith Finell Musicservices Inc. performed a pre-suit analysis on Cooper's behalf. Among other things, Ms. Finell was one of the testifying experts for the estate of Marvin Gaye in the case underlying the decision in *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018), *infra.*

elements" and is, therefore, qualitatively different from a copyright infringement claim. Plaintiffs' common law copyright claim also survives to the extent that there are any temporal limitations on Plaintiffs' federal copyright claim, and Plaintiffs are nevertheless entitled to recover for infringement that occurred before their copyright was registered in August 2020. Finally, contrary to the Moving Defendants' assertion in the Motion, under Florida state law, accounting is a viable separate cause of action, rather than a mere prayer for relief.

## LEGAL ARGUMENT

### I.   THE DISMISSAL STANDARD

When evaluating a motion to dismiss a complaint under Rule 12(b)(6), a court must view the allegations in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *See*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). The plaintiff must plead "only enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Thus, to withstand Rule 12(b)(6) scrutiny, a complaint need not set forth "detailed factual allegations" in support of the claims. *Id*. at 555.

In fact, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 556 (internal quotations omitted). Consequently, motions to dismiss "are generally viewed with disfavor and rarely granted." *Klaskala v. U.S. Dep't of Health & Hum. Servs.*, 889 F. Supp. 480, 483 (S.D. Fla. 1995). Moreover, there are no heightened pleading requirements applicable to the present action. *See*, *e.g.*, *Klein & Heuchan, Inc. v. Costar Realty Information, Inc.*, No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130, at *2 (M.D. Fla. April 8, 2009) (recognizing that a claim for "copyright infringement does not require a heightened standard of pleading").

Plaintiffs' Complaint readily satisfies the plausibility standard set forth in *Twombly* and its progeny, and Plaintiffs should be permitted to proceed on all of their claims.

## II.    PLAINTIFFS HAVE STATED A CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT.

To state a claim for copyright infringement upon which relief may be granted, a plaintiff must properly allege only two elements: "(1) ownership of a valid copyright; and (2) copying of the constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Company*, 499 U.S. 340, 361 (1991); *see also Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1247-48 (11th Cir. 1999).[3]   The Moving Defendants concede the first element given that Plaintiffs' copyright is undisputed and argue only that Plaintiffs cannot <u>establish</u> Defendants' "copying" of Plaintiffs' Work – *i.e.*, the second element.

At an appropriate stage of the litigation, a plaintiff can establish the "copying" element of an infringement claim either through "direct proof of copying" or, alternatively, by demonstrating that "defendants had access to the copyrighted work and that the works are 'substantially similar.'" *Herzog*, 193 F.3d at 1248 (quoting *Benson v. Coca-Cola Co.*, 999 F.2d 1436, 1440 (11th Cir. 1986), *reh'g denied,* 801 F.2d 404 (11th Cir.1986) (*en banc*)).   However, at the pleading stage, Plaintiffs are obviously not required to set forth the entirety of the evidence upon which they will rely to meet their burden of proof and cannot reasonably be expected to do so without the benefit of any discovery whatsoever.   After discovery, Plaintiffs in this case may, in fact, be in a position to prove <u>direct</u> copying by Defendants.   For now though, the Complaint sets forth specific allegations of fact sufficient to make out plausible claims that Defendants copied Plaintiffs' Work, that Defendants had "access" to Plaintiffs' Work, and that Defendants' Work is "substantially similar" to Plaintiffs' Work in material respects.   Therefore, Plaintiffs have met their burden for

---

[3]      Notably, copyright infringement "is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alternatives to disguise the piracy." *Universal Pictures Corp. v. Harold Lloyd Corp.*, 162 F.2d 354, 360 (9th Cir. 1947).

purposes of Rule 12(b)(6) review, and the Motion should be denied.[4]

## A. __Plaintiffs Have Sufficiently Alleged Access__

As noted above, access, in the context of a copyright infringement claim in the Eleventh

Circuit, is __not__ defined as "the actual viewing and knowledge of plaintiff's work by the defendant."

*Herzog*, *supra*, 193 F.3d at 1249.  This is precisely because it is "often impossible for a plaintiff

to offer direct evidence that defendant actually viewed or had knowledge of plaintiff's work" (even

after discovery).  *Id.*  Accordingly, and as the Moving Defendants recognize (Motion, p. 8), access

is instead defined merely as the "reasonable opportunity" to view or hear the relevant work.  *See*

*id*.  Put another way, to satisfy his or her burden on access, a plaintiff must merely show that there

is "a reasonable __possibility__ that the defendant came across the plaintiff's work." *Watt v. Butler*,

457 F. App'x 856, 859 (11th Cir. 2012) (emphasis added). Moreover, while a plaintiff is not limited

in how it may establish that a defendant had a "reasonable opportunity" to view or hear the work

in question, it "is most often proven by way of circumstantial evidence . . . in one of two ways: (1)

a particular chain of events is established between the plaintiff's work and the defendant's access

to that work . . . ; or (2) the plaintiff's work has been widely disseminated." *Idema v. Dreamworks,*

*Inc.*, 162 F. Supp. 2d 1129, 1175 (C.D. Cal. 2001), *aff'd in part, dismissed in part*, 90 F. App'x

496 (9th Cir. 2003), *as amended on denial of reh'g* (Mar. 9, 2004).

---

[4]     As counsel for the Moving Defendants himself once argued in a substantially similar proceeding in which he represented the plaintiffs, "by weaving in-and-out cases decided on different standards – some on summary judgment, others on dismissal – and under varying tests . . . [the Moving Defendants'] portrayal of the legal standard is, at best, uneven."  *See Latele Television C.A. v. Telemundo Communications Group, LLC*, No. 1:12-cv-22539, Dkt. No. 19, Opposition Brief, p. 10 (S.D. Fla. Oct. 11, 2012).  Moreover, the Moving Defendants improperly assume that Plaintiffs will be unable to adduce direct proof of copying at a later stage in this litigation.  However, given the circumstantial evidence described in the Complaint, it is certainly possible that discovery will reveal such direct proof.  Plaintiffs have also unquestionably alleged that Defendants actually copied Plaintiffs' Work.  *See, e.g.*, Compl. ¶ 3 (alleging that, "by every method of analysis, *No Guidance* is a forgery – copied from Plaintiffs, who wrote, recorded and published their original song, approximately 3 years earlier").  As such, the Moving Defendants cannot unilaterally limit Plaintiffs to only one available method of proof at the pleading stage.

While the Moving Defendants may ultimately deny and attempt to disprove Plaintiffs' allegations, the Complaint unquestionably sets forth a plausible claim of access. More specifically, the Complaint alleges that, in August 2018, Cooper performed Plaintiffs' Work publicly, with many people in attendance, and published a video of that performance on YouTube shortly thereafter. *See* Compl. ¶¶ 40-42. The Complaint also alleges that Plaintiffs further published their Work on Spotify, Apple Music, Tidal and other major music platforms. *Id.* ¶¶ 38, 43. Furthermore, the Complaint alleges that Plaintiffs both marketed and published their Work on various social media applications and internet-based websites, including YouTube, Instagram, Facebook, Snapchat, Twitter, and www.therealmrcooper.com. *Id.* ¶¶ 44-45. Despite the Moving Defendants' allegations to the contrary (Motion, pp. 9-10), these allegations alone – assumed as true – satisfy the "widely disseminated" standard in that Plaintiffs' Work was "readily available in the relevant market." *See* Motion, pp. 9-10 (citing *Loomis v. Cornish*, No. 12-cv-5525, 2013 WL 6044345, at *10 (C.D. Cal. Nov. 13, 2013)).

Nonetheless, the Complaint also plausibly sets forth a "particular chain of events" from which a finder of fact might reasonably infer that Defendants gained access to Plaintiffs' Work. On this point, the Complaint alleges that an A&R representative called Mic Tee – associated with Cash Money Records and the AMAG Collective, amongst others – independently identified Cooper as an artist of interest, solicited his work, and even suggested a meeting in Toronto. *See* Compl. ¶¶ 47-49. According to the Complaint, Mic Tee specifically received Plaintiffs' Work in March 2019 via e-mail before requesting "unreleased music" from Cooper (presumably so that he and/or third parties with whom he worked could utilize such music with a reduced risk of an infringement claim). *See id.* ¶¶ 47-50. As further alleged, Mic Tee's connections to Defendants abound. Specifically, Plaintiffs allege that Mic Tee suggested Cooper travel to Toronto – the main location of the AMAG Collective and Drake's hometown. *Id.* ¶ 48 and n. 1. They further allege that the AMAG Collective scouts and develops talent for Cash Money Records and its founder,

Bryan Williams a/k/a Birdman ("Birdman"). The Complaint then highlights that, during the time when *No Guidance* was being created and recorded (and Mic Tee undisputedly received Plaintiffs' Work), "Birdman and Brown (and their associates) were in regular and close contact as co-producers and co-stars, filming the movie entitled *She Ball*." *Id.* The Complaint further notes that Birdman has a long history and relationship with Drake and Brown dating back to at least 2012. *Id.* Based on these alleged facts, as established solely through pre-suit due diligence without the benefit of any discovery, it is plausible that Defendants' publication of *No Guidance* several months after Mic Tee's receipt of Plaintiffs' Work – with its striking similarities to Plaintiffs' Work – was not a mere coincidence. *See id.* ¶¶ 49-51.[5]

These allegations – which represent only a portion of those contained in the Complaint – go above and beyond satisfying Plaintiffs' burden at the pleading stage and plausibly set forth a "reasonable possibility" that Defendants came across Plaintiffs' Work prior to creating the infringing work. *See*, *e.g.*, *Twombly*, 550 U.S. at 570; *Watt*, 457 F. App'x at 859. Nonetheless, the Moving Defendants request that this Court determine, prior to discovery, that Plaintiffs cannot possibly establish access as a matter of law. This is plainly improper.

---

[5]    The Moving Defendants, in a footnote, argue that the Complaint improperly fails to distinguish between Defendants. However, the allegations in the Complaint highlight that all Defendants claim some form of copyright credit for *No Guidance* and set forth facts establishing that all Defendants may be liable for copying Plaintiffs' Work. *See* Compl. ¶¶ 13-31 and 51-99. Moreover, in addition to direct copyright infringement, the allegations set forth viable claims for vicarious and/or contributory copyright infringement. *See* Compl. ¶¶ 100-107. *See*, *e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (holding that a party infringes vicariously by "profiting from direct infringement while declining to exercise a right to stop or limit it"); *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 845 (11th Cir. 1990) (holding that "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another [is liable for contributory infringement]"). The Moving Defendants are welcome to challenge the viability of these claims against one or more defendants following Plaintiffs' opportunity to gather further information in discovery regarding each of the Defendants' unique involvement in the infringement. Discovery will demonstrate, for example, whether one or more of the Defendants (or members of their creative teams) attended Cooper's 2018 performance of Plaintiffs' Work in Miami or whether Mic Tee, in fact, passed along a copy of Plaintiffs' Work to one or more of them.

Significantly, not a single decision cited by the Moving Defendants holds that the issue of access is properly decided, <u>with prejudice</u>, at the pleading stage.[6] For these reasons, as further discussed below, the Motion must be denied.

**1. Plaintiffs Have Alleged a Plausible "Chain of Events" Through Which Defendants Had a Reasonable Opportunity to View or Hear Plaintiffs' Work.**

A plaintiff in a copyright infringement case may prove "access" by demonstrating "that it is reasonable to infer from a particular chain of events that the defendant gained access to the copyrighted work." *Lassin v. Island Def Jam Music Grp.*, No. 04-cv-22320, 2005 WL 5632056, at *5 (S.D. Fla. Aug. 9, 2005). The Motion incorrectly asserts that Plaintiffs can establish access under the "particular chain of events" method only if they allege and prove that Plaintiffs' Work was provided to an intermediary who "(1) . . . [had] supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators." *See* Motion, p. 11. However, not only does the "particular chain of events" method of proving access <u>not</u> necessarily require any "intermediary" at all, but the cases cited in the Motion for this proposition merely hold that a plaintiff <u>can</u> or <u>may</u> establish access through an intermediary that falls into one of the three categories identified by the Moving Defendants. *See id.* (citing *Loomis*, 2013 WL 6044345, at *10 and *Davis*, 2012 WL 12868729, at *3).

Indeed, the Court in *Loomis* very clearly rejected the notion that that the three categories of intermediaries identified by the Moving Defendants are the only types of intermediaries that may be relevant. *Loomis*, 2013 WL 6044345, at *5. Instead, it specifically found that a plaintiff

---

[6]     In *Ross v. Apple, Inc.*, 741 F. App'x 733 (11th Cir. 2018), the court affirmed the district court's dismissal of the *pro se* plaintiff's complaint and denial of leave to replead since plaintiff simply could not establish "that he had a valid copyright . . . ." *Id.* at 737. The Court in *Davis v. Raymond*, No. 12-cv-22578, 2012 WL 12868729 (S.D. Fla. Nov. 30, 2012) permitted repleading after the plaintiff asserted only a "single, nebulous claim that an unidentified songwriter and delivered the work" to the defendants and failed to allege any connection whatsoever between the songwriter and the defendants. *Id.* at *3. In *Dixon v. Sony Corp. of Am.*, No. 12-60160-CIV, 2012 WL 1886550 (S.D. Fla. May 23, 2012), the Court dismissed the *pro se* plaintiff's complaint without prejudice to replead where the plaintiff alleged "substantial similarity," but the complaint did not "contain any allegations of copying by Defendants." *Id.* at *2-3.

seeking to establish access can do so more broadly through a demonstration that the work was provided "to an intermediary who is [merely] in a position to transmit [plaintiff's] work to the creators of the infringing work." *Loomis*, 2013 WL 6044345, at *5 (internal quotations omitted).

Ignoring this finding and the well-settled standards that apply on a motion to dismiss, the Moving Defendants ask this Court to determine, contrary to Plaintiffs' allegations, that the intermediary here was not even in a "position to transmit" the work to Defendants. *See* Motion, pp. 11-12.  However, the Moving Defendants cite to no legal authority supporting such a request.[7] Furthermore, Plaintiffs' Complaint pleads specific facts setting forth a chain of events from which it is reasonable to infer that Defendants gained access to Plaintiffs' Work. Specifically, Plaintiffs alleged that their Work was provided to an intermediary – Mic Tee – who was in a position to transmit it to Defendants.  *See* Compl. ¶¶ 47-49.  This is all that Plaintiffs need to do at the pleading stage with respect to this potential method of proof.

### 2.   Plaintiffs Have Alleged that the Work Was Widely Disseminated.

Another evidentiary method through which Plaintiffs may ultimately establish that there is a reasonable possibility that Defendants came across Plaintiffs' Work is through a demonstration that Plaintiffs' Work was "widely disseminated."  For a work to be considered "widely disseminated, it must achieve a high degree of commercial success or be readily available in the relevant market."  Motion, p. 9 (*quoting Loomis*, 2013 WL 6044345, at *10) (emphasis added).

In *Kelly Tracht, LLC v. Dazzle Up, LLC*, No. 17-80434-CIV, 2017 WL 4681329 (S.D. Fla. Oct. 18, 2017), this Court denied the defendants' motion to dismiss and rejected the argument that plaintiff failed to allege in the complaint that its artwork was "widely disseminated," holding that "these arguments are more appropriate at the summary judgment stage, rather than at this early

---

[7]       In addition to *Loomis* and *Davis*, the Moving Defendants rely on two other cases on this specific argument, neither of which address pleading standards under Rule 12(b)(6).  *See* Motion, pp. 11-12 (citing *Batts v. Adams*, No. 10-cv-8123, 2011 WL 13217923, at *3 (C.D. Cal. Feb. 8, 2011) and *Watt*, *supra*, 457 F. App'x 856). Specifically, *Batts* addressed a motion for a preliminary injunction and *Watt* evaluated a motion for summary judgment.

stage in the proceedings." *Id.* at *3.  There, the plaintiff alleged that it had "marketed and sold twenty different expressions of the turtle images on Etsy since 2012, [resulting] in 888 sales and 1,571 admirers who follow the page." *Id.* at *3.  The defendants argued that these allegations demonstrated limited sales and distribution and failed to identify further facts about the dissemination of the images.  *See id.*  However, the Court disagreed, noting that the plaintiff also alleged promotion of the images on various internet websites, appearances of the images on Google, and exhibitions of the images at local art galleries. *Id.*  As such, the Court held that the plaintiff had alleged access in a manner sufficient to survive the motion to dismiss.  *Id.*; *see also Olem Shoe Corp. v. Washington Shoe Co.*, No. 09-23494-CIV, 2013 WL 12092259, at *10 (S.D. Fla. Sept. 16, 2013) (concluding on motion for summary judgment that the mere online presence of a pair of boots on Target's website supported a finding of access and distinguishing *Art Attacks Ink, LLC v. MGA Entertainment, Inc.*, 581 F.3d 1138 (9th Cir. 2009) on the grounds that, at the time in question in *Arts Attacks* (1996), "the qualities and capabilities of the website in that case were severely limited").[8]

The Moving Defendants cannot and do not cite to a single Eleventh Circuit decision which holds that the issue of "wide dissemination" is properly adjudicated at the pleading stage. Moreover, each of the cases cited by the Moving Defendants on this issue is plainly inapplicable, outdated, or otherwise factually distinguishable.[9]

---

[8]     In *Kelly Tracht*, the Court also found *Dixon* – a case cited throughout the Motion – inapplicable, concluding that it "concerned a complaint, filed by a pro se plaintiff, which made the conclusory allegation that his work was 'widely disseminated' without providing any additional facts, unlike the instant . . . Complaint." *Kelly Tracht*, 2017 WL 4681329, at *3.

[9]     Specifically, *Loomis*, *supra*; *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.,* 590 F. Supp. 2d 500 (S.D.N.Y. 2008); and *Apps v. Universal Music Group, Inc.*, No. 2:16-cv-01132, 2018 WL 10455903 (D. Nev. Apr. 27, 2018) (Motion, pp. 9-10) were all decided on summary judgment, while *Batts*, *supra* (Motion, p. 11) addressed a motion for a preliminary injunction. Moreover, the court in *Tate-Robertson v. Walmart, Inc.,* No. No. 19-cv-27, 2019 WL 6448960 (C.D. Cal. May 16, 2019) (Motion, pp. 9-10) dismissed the complaint while preserving the plaintiff's opportunity to replead, noting that access was not established through sole allegation that plaintiff "is an artist who regularly sells, licenses, or otherwise exploits her artwork on accessories." *Id.* at *4.  Similarly,

In this case, as set forth above and more fully in the Complaint, Plaintiffs allege that, in August 2018, Cooper performed Plaintiff's Work publicly and published a video of that performance on YouTube shortly thereafter; Plaintiffs published their Work on Spotify, Apple Music, Tidal and other major music platforms, making it widely available for streaming and downloading; and Plaintiffs simultaneously marketed and published their Work on various social media platforms and websites, which were all readily accessible to Defendants. *See* Compl. ¶¶ 38, 40-46.  The Complaint also alleges that at least one industry professional, Mic Tee, independently identified Cooper as an artist of interest, solicited his work, and obtained a copy of Plaintiffs' Work (among others).  *Id.*  ¶¶ 47-49).  Together, these facts, when accepted as true, demonstrate that Plaintiffs' Work was "readily available in the relevant market" – the hip-hop and R&B music industry – and, therefore, Plaintiffs have sufficiently pled widespread dissemination under applicable law.

### B. Plaintiffs Have Sufficiently Alleged Substantial Similarity Between Plaintiffs' Work and Defendants' Work.

Courts in the Eleventh Circuit employ "extrinsic" and "intrinsic" tests for ultimately determining whether "substantial similarity" has been proven in a particular case. *Herzog*, *supra*,

---

the court in *Meynart-Hanzel v. Turner Broad. Sys.,* No. 17-cv-6308, 2018 WL 4467147 (N.D. Ill. Sept. 18, 2018) (Motion, p. 10) dismissed the complaint while preserving plaintiffs' opportunity to replead and noted simply that wide dissemination was not established through the allegation that plaintiffs placed the work on YouTube alone.  *Id.* at *6.  Without belaboring the point, the cases cited by the Moving Defendants are all incongruent with this Court's holding in *Kelly Tracht.* Cases regarding internet access decided more than 10 years ago – including *O'Keefe* and *Art Attacks* – are also plainly outdated due to substantially increased internet usage and the relatively recent explosion of social media and streaming music platforms.  By way of example only, and without limitation, when *O'Keefe* and *Art Attacks* were decided, Instagram did not even exist.  *See* Wikipedia, *Instagram*, https://en.wikipedia.org/wiki/Instagram (noting the creation of Instagram in 2010).  It now boasts over 1 billion users, including all or almost all of the Defendants named in this action, who can readily access Cooper's account, as well as marketing and publications of Plaintiffs' Work, in particular.  *See id*. (noting that Instagram surpassed 1 billion users as of June 2018); *see also* www.instagram.com – @champagnepapi (Drake's account); @chrisbrownofficial (Brown's account); @vinylz (Anderson Hernandez's account); @amnija_ (Nija Charles' account); @velous (Tyler Bryant's account);  @teddywalton (Travis Darelle Walton's account); @sonymusic (Sony Music's account); and @rcarecords (RCA Records' account).

193 F.3d at 1257. The extrinsic test is objective, and it "considers whether two works share a similarity of ideas and expression as measured by external, objective criteria." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). The extrinsic test further "requires analytical dissection of a work and <u>expert testimony</u>." *Id.* (internal quotations omitted) (emphasis added). Meanwhile, the "intrinsic test is subjective and asks whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (internal quotations omitted).

Initially, determining whether Plaintiffs can satisfy the extrinsic and/or intrinsic tests at the pleading stage is wholly improper. Nevertheless, Plaintiffs' Complaint clearly sets forth allegations which, if true, satisfy both tests. *See* Compl. ¶¶ 4-5 and 51-63. Without limitation, Plaintiffs allege that "a comparative analysis of the beat, lyrics, hook, rhythmic structure, metrical placement, and narrative context demonstrates that *No Guidance* was copied or principally derived from [Plaintiffs' Work]." *Id.* ¶ 4. Plaintiffs further allege that "[t]he similarities between *No Guidance* and [Plaintiffs'] Work . . . are such that it is simply not reasonable to believe that *No Guidance* could have been created without having heard the Work first." *Id.* ¶ 62. In addition, and more specifically, Plaintiffs allege that musicology experts have already "compared the two works and found, *inter alia*, a 'high degree of combined similar features, including the hook lyrics and the primary scale degrees'" and that "both works also use a distinctive sound effect of a pitch metronome-like click and a vocal effect through which portions of the primary vocal part appear to have been sped up to a high register and added to double/echo the primary vocal part." *Id.* ¶¶ 54-55. Plaintiffs further allege that the "creative selection and combination" of these elements were "original" (*id.* ¶ 81) (and the aforementioned experts further concluded pre-suit that such elements are unique enough that they are unlikely to be found in the same combination in prior musical works).

Together, the allegations regarding the <u>objective</u> features of the two works are independently sufficient to show a striking overall degree of similarity between them, which is "not just incidental, but rather [goes to] the core of each work." *Id.* ¶ 53. Additionally, however, Plaintiffs allege that even "[n]on-expert listeners have pointed out that Defendants 'copied' *I Love Your Dress* in creating *No Guidance* as the two songs clearly employ numerous noticeably similar composition elements and lyrics." *Id.* ¶ 56. As such, Plaintiffs have adequately alleged that the <u>subjective</u> test is also satisfied.

### 1. Substantial Similarity Is a Determination Best Left for the Trier of Fact.

While the Moving Defendants argue that the issue of substantial similarity can be decided on this Motion (Motion, pp. 12-19), they cannot and do not point to a single case from the Eleventh Circuit in which the issue of substantial similarity was decided at the dismissal stage. This is not a mere coincidence. The extrinsic test contemplates a thorough analytical dissection of a pair of works and expert testimony, something which is not required at the pleading stage. *Herzog*, 193 F.3d at 1257. Moreover, while the extrinsic test can be evaluated on a <u>motion for summary judgment</u>, the intrinsic test is reserved exclusively for the trier of fact. *See, e.g.*, Benay *v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010).

Apparently recognizing the futility of their argument that substantial similarity should be resolved at this early stage, the Motion again weaves in-and-out of cases decided on different standards and relies on largely out-of-jurisdiction legal authority applying tests and standards not applicable to Plaintiffs' claims. *See* Motion, pp. 12-18. In any event, contrary to the Moving Defendants' request for relief, a motion to dismiss under Rule 12(b)(6) is not the appropriate procedural mechanism for evaluating substantial similarity where, as here, the Complaint plainly alleged both objective and subjective similarities between the two works. *See, e.g.*, *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 41 (D.D.C. 2007) (holding that "[s]ubstantial similarity is a question that should be decided either by a fact finder at trial or, in some cases, in

the context of a motion for summary judgment, <u>not on a motion to dismiss for failure to state a claim under Rule 12(b)(6)</u>") (emphasis added). Indeed, courts have noted their reluctance, even at the summary judgment stage, to rule on the issue of substantial similarity due to their hesitation "to make subjective determinations regarding the similarity between the two works." *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enterprises*, 533 F.3d 1287, 1302 (11th Cir. 2008) (*citing Herzog*, 193 F.3d at 1247). Accordingly, and for this reason alone, the Moving Defendants' arguments are improper and should be rejected.

**2. The Combination of Elements Which Defendants Copied from Plaintiffs' Work Are Original, Copyrightable and Subject to Broad Protection.**

The Moving Defendants next argue that Plaintiffs' Work does not contain elements which are copyrightable. *See* Motion, pp. 13-14. This, however, is legally incorrect.

The Ninth Circuit's decision in *Williams, supra*, is highly instructive. In *Williams*, the Ninth Circuit reviewed a claim that the song *Blurred Lines* by Robin Thicke and Pharrell Williams was substantially similar to Marvin Gaye's hit song *Got To Give It Up*. *Williams*, 895 F.3d at 1107. After a seven-day trial, a jury found that *Blurred Lines* infringed upon *Got To Give It Up* based, in part, on testimony by musicology experts – including one consulted by Plaintiffs in this case – that the works were "substantially similar" because they were melodically and harmonically compatible and shared many similarities, "including the bass lines, keyboard parts, signature phrases, hooks, 'Theme X,' bass melodies, word painting, and the placement of the rap and 'parlando' sections in the two songs." *Id. at* 1117–18.[10]

---

[10]     Given that the Moving Defendants ask this Court to determine that Plaintiffs' claims fail as a matter of law under a Rule 12 (b)(6) analysis, it should be noted that the *Blurred Lines* parties asserted similar arguments <u>at trial</u> that there were "no substantial similarities between the melodies, rhythms, harmonies, structures, and lyrics [between the two works.]" *Williams*, 895 F.3d at 1117. However, unlike the Moving Defendants here, the *Blurred Lines* parties made these arguments following discovery and did so with support from qualified experts. Even then, and despite the Court acknowledging numerous differences between the keys, progressions, and instrumentations of the two works, the verdict against the *Blurred Lines* parties was affirmed.

In affirming the jury's verdict, the Ninth Circuit held that "substantial similarity can be found in a <u>combination of elements,</u> even if those elements are individually unprotected." *Id.* at 1119–20 (emphasis added). The Court noted that, if qualitatively important, a combination of unprotectible elements is protectible under the extrinsic test even if the copied portion is relatively small in proportion to the entire work. *Id.* (internal citations omitted). The Court then observed that "even an arrangement of a limited number of notes can garner copyright protection." *Id.* (*quoting Swirsky, supra*, 376 F.3d at 848-852); *see also Three Boys Music*, 212 F.3d at 485 (affirming a finding of copyright protection based on a "combination of five otherwise unprotectable elements: (1) the title hook phrase (including the lyric, rhythm, and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending," and further holding that it is "well settled that a jury may find a combination of unprotectible elements to be protectible under the extrinsic test because the over-all impact and effect indicate substantial appropriation") (internal quotations omitted).  Moreover, in contrast to the Moving Defendants' claim that Plaintiffs' Work is entitled to only "thin" copyright protection (Motion, p. 17), the Court in *Williams* found that musical compositions are entitled to broad protection and, as such, concluded that plaintiffs "need not prove virtual identity to substantiate their infringement action." *See*, *e.g.*, *Williams*, 895 F.3d at 1120.[11]

Here, contrary to the Moving Defendants' suggestion, Plaintiffs do not allege that Defendants are liable for copyright infringement solely because *No Guidance* features the phrase

---

[11]    The Motion cites to a series of non-binding and inapposite decisions from out-of-circuit courts for the notion that Plaintiffs' Work is entitled to only "thin" copyright protection.  *See* Motion, p. 17.  However, this is contrary to the only decision addressing this topic in the Eleventh Circuit in the context of musical composition. In *Roberts v. Gordy*, No. 04-cv-22320, 2015 WL 11202356, at *16 (S.D. Fla. September 17, 2015), this Court rejected the defendants' arguments, on a motion for summary judgment, that the lyric "everyday I'm hustlin'" was entitled to only thin copyright protection. The Court further noted that, when the copyrighted work at issue is music, it commands "robust copyright protections." *Id*. at *16 (internal citations omitted). Moreover, the Court in *Roberts* emphasized that "in moving for summary judgment, Defendants conceded, without waiving, the originality of [the lyrics] for purposes of this motion.… [Plaintiffs' work] is undoubtedly a creative, non-factual work, as are its lyrics." *Id*. at *12.

"you got it" or utilizes a highly similar lyrical theme.[12] Instead, as detailed above and in the Complaint itself, Plaintiffs allege that the Defendants copied <u>several</u> material, unique, and original portions of Plaintiffs' Work –<u>creatively selected and combined</u> by Plaintiffs (Compl. ¶ 81) – in their creation of *No Guidance*.  Additionally, while the Motion objects to Plaintiffs' purported failure to provide extremely specific analytical details regarding these claims (Motion, p. 18), Plaintiffs are under no obligation to do so at this early stage.  As noted in *Herzog*, *supra*, the various objective elements which Defendants copied will be the subject of expert discovery and testimony which Plaintiffs need not provide to survive a motion to dismiss.  Regardless, Plaintiffs' Complaint unquestionably provides sufficiently specific and detailed factual allegations regarding the objectively and subjectively similar elements of the two works, and the Motion should be denied accordingly.

## III.   PLAINTIFFS' STATE LAW CLAIMS ARE NOT PREEMPTED.

A plaintiff asserting a claim for unjust enrichment must demonstrate that: (1) he or she conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained the benefit conferred, and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying its value to the plaintiff.  *See*, *e.g.*, *Merkle v. Health Options, Inc.,* 940 So.2d 1190, 1199 (Fla. Dist. Ct. App. 2006) (citations omitted).  This Court has previously held that, because an unjust enrichment claim under Florida law requires a demonstration both that the plaintiff *conveyed* a benefit and that the defendant *accepted* that benefit, it requires a plaintiff to establish extra elements "beyond what a plaintiff needs to prove in a copyright infringement claim[, rendering] the unjust enrichment claim qualitatively different from a copyright infringement claim." *Jaggon v. Rebel Rock Ent., Inc.*, No. 09-cv-61144, 2010 WL 3468101, at *3 (S.D. Fla. Sept. 1, 2010) (*citing Utopia Provider Sys., Inc. v. Pro–Med Clinical*

---

[12]     Nonetheless, as noted in *Roberts*, *supra*, the Moving Defendants' arguments that the Court should conclude that these particular elements are not "original" are improper on a Rule 12(b)(6) motion and should be squarely rejected.

*Sys., LLC*, 596 F.3d 1313 (11th Cir.2010)). As a result, Plaintiffs' claim for unjust enrichment is not preempted by federal copyright law, as the Moving Defendants allege (Motion, p. 19).

Nor is Plaintiffs common law copyright infringement claim preempted to the extent that Plaintiffs are entitled to plead in the alternative and there are any temporal limits on their federal copyright claim. *See* Compl. ¶¶ 11 and 70-86.  In any event, Plaintiffs are entitled to recover for infringement that occurred before their copyright was registered on August 17, 2020. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886–87 (2019) (recognizing that, upon registration of a copyright, the copyright owner "can recover for infringement that occurred both before and after registration").

**IV.** **FLORIDA LAW PROVIDES FOR A SEPARATE CAUSE OF ACTION FOR ACCOUNTING.**

Finally, contrary to the Moving Defendants' argument (Motion, p. 20), under Florida law, "an action for an accounting is a separate and distinct cause of action . . . ." *Cassedy v. Alland Invs. Corp.*, 128 So. 3d 976, 978 (Fla. Dist. Ct. App. 2014).  To adequately allege a claim for accounting, a plaintiff must plead the existence of "a complex transaction and . . . that the remedy at law is inadequate." *Eye Care Int'l, Inc. v. Underhill*, 92 F.Supp.2d 1310, 1316 (M.D. Fla. 2000). Plaintiffs' Complaint does precisely that and, as such, Plaintiffs should be entitled to proceed on their accounting claim. *See* Compl. ¶¶ 115-120.

## CONCLUSION

For all of the reasons explained above, Plaintiffs have satisfied their burdens at the pleading stage pursuant to Rule 12(b)(6) and the Moving Defendants' Motion should be denied in all respects.  Furthermore, while Plaintiffs reject the argument that they have not met their pleading burdens, based on the foregoing, if the Court finds that there are deficiencies in the Complaint, Plaintiffs should be afforded ample opportunity to file and serve an Amended Complaint. *See*, *e.g.*, Fed. R. Civ. P. 15 (stating the axiomatic rule that the court "should freely give leave [to amend] when justice so requires).

Dated: West Palm Beach, FL
February 8, 2022

McLAUGHLIN & STERN PLLC

By: _____/s/ Neil B. Solomon_____
    Neil B. Solomon, Esq.

525 Okeechobee Blvd., Suite 1700
West Palm Beach, FL 33401
Tel.: (561) 659-4020
nsolomon@mclaughlinstern.com

McLAUGHLIN & STERN, LLP
Chester R. Ostrowski, Esq.*
Jason S. Giaimo, Esq.*
Charles F. Kellett, Esq.**
260 Madison Avenue
New York, NY 10016
Tel.: (212) 448-1100
costrowski@mclaughlinstern.com
jgiaimo@mclaughlinstern.com
ckellett@mclaughlinstern.com
* Admitted *Pro Hac Vice*
** *Pro Hac Vice* Admission Anticipated

*Attorneys for Plaintiffs Braindon N. Cooper a/k/a Mr Cooper, Timothy L. Valentine a/k/a Drum'N Skillz, and Signature Seriez Entertainment, Inc.*